Our next argument is 18-4078, Abdi v. Wray. Mr. Abbas? Good morning, Your Honor. I'm here for the appellant's seat here, Abbas. I'm going to be interviewing Lina Mastro. Okay. You may proceed. Thank you. With Your Honor's permission, I'd like to reserve three minutes for rebuttal. May it please the Court. The District Court committed reversible error in three parts. To begin with, the District Court overlooked Imam Abdi's no-fly list claim, which should have been adjudicated at the lower level subject to the voluntary secession doctrine. Now, a fundamental misunderstanding of the District Court's decision is that there really isn't a no-fly list and there really isn't a Selectee List. Instead, there's really just one single list, the Terrorist Screening Database, and each entry in that list is annotated in a variety of different ways. The no-fly list annotation imposes a flight ban on listees. The Selectee List designation imposes onerous screening procedures on listees, people that are annotated with the Selectee List annotation. However, the TSDB, the actual watch list, accords consequences to its listees independent of the no-fly list annotation and the Selectee List annotation. And so here, where the government places an innocent American, an American who has not been charged, arrested, or convicted of a violent offense of any kind, on a secret government watch list, procedural due process and substantive due process protections apply. Those substantive due process protections exist to protect Yusuf Abdi's right of movement, a right that is broader and more fundamental than the right of interstate travel that the lower court referred, as well as the right of international travel that the lower court also referred. So I assume, because you are trying to get a new fundamental right of movement, that you are implicitly conceding that you would not state a claim under the existing traditional right of travel. No, Your Honor, that's not... However this court chooses to construe... Well, you'd be happy to win under travel, but if you thought you had a good case under travel, you wouldn't be trying so hard to get us to create a brand new right of international movement. Your Honor, the reason why plaintiffs are strident in asserting that this right of movement exists is not due to a weakness of the argument about international travel or interstate travel. There are very clear cases that describe what we would think of as aspects of the right of movement, the international aspect of the right of movement and the interstate aspect of the right of movement. However, this court cuts it if it's just looking at interstate travel and there really is no debate that the right of interstate travel, to travel from one state to another, from California to New York, from Florida to Utah, is a fundamental right. And the ability to access the common modes of transportation, obviously in a self-explanatory way, interferes with the right of movement because one cannot get from Chicago to Alaska in the normal course of life... Why isn't that just a de minimis burden on the right to travel? He hasn't been denied access to any ability to move from state to state or outside the country, correct? It's more of a hassle. Your Honor, that's only because he's been taken off... The no-fly list annotation on his watch list record has been suspended or altered in some way that's unknown to us. It's secret. They never told us. They never confirmed that he was on the no-fly list. They never confirmed that he was taken off the no-fly list. They never confirmed that he was in the TSDB. They never confirmed that he was taken off of it. And so the right... Well, he's not on a no-fly list because he's flying. Well, a lot has been learned, actually, publicly about the watch-listing system since briefing, in this case, has passed due to pending litigation in other states. And one of the key facts that has come out is that the federal government actually annotates who has sued the federal government, and that's on the watch list. And so when Imam Abdi, just over the weekend, traveled internationally from Saudi Arabia, Mecca, to do umrah, a religious pilgrimage, back to Salt Lake City via L.A., the L.A. customs officials seemed to already know who he was. And so when this court and when the lower court is dealing with a secret watch-list, a watch-list whose inclusion standards are not fully known to the public or to this court or to the lower court, a fact-intensive inquiry into the constitutionality of a watch-list is appropriate. But what's his harm? His harm is multifaceted and not limited to travel. I know we're talking about travel. I understand that you've got the reputational piece, but, I mean, what's the burden on interstate or international travel at this point? Well, this is where the, with regards to the flight ban annotation, which plaintiffs assert is still viable for adjudication because of the voluntary secession doctrine. I'm sorry. Go ahead. I'll come back later. Go ahead. Via the voluntary secession doctrine, this court, as should have the lower court, should have adjudicated the consequences of the flight ban. And a flight ban, obviously, makes it impossible to fly from one end of the country to the other. And when he's banned from travel, wouldn't that be the time that you'd have a ripe claim to challenge his inclusion on the no-fly list? But we're not there yet. We're on a secret selective list that he has, what, enhanced screening, right? Isn't that where we are? Well, we were at a flight ban when this case was initially filed. The precipitating event that led to some alteration of his TSDB status was the actual filing of this lawsuit. He was not allowed to fly from Kenya back to his home in Utah because of the flight ban annotation on his TSDB entry. How did he get back? He got back after the litigation was initiated. The federal government has this process of issuing one-time waivers to Americans who fly overseas and then are placed on the no-fly list after they fly overseas. And these one-time waivers functionally operate as a way for the federal government to insulate their authority to deploy the no-fly list annotation against innocent Americans and shield it from judicial review. Well, that's kind of a different claim, it seems to me. I mean, I thought we were talking about his right of movement, and he got a waiver for the one impairment on returning to the United States. Now, as far as I can tell, his freedom of movement is impaired not at all. Your Honor— If you want to sue the government over their practices involving targets, that's a different claim than your right to travel. Well, Your Honor, I think the Ninth Circuit recently, after the briefing, after Imam Abdi submitted his brief on September 20, 2018, in Jonas Fikre v. FBI, 3,13-CV00899, dealt with the exact same issue that this court is dealing with. That person's on the no-fly list. That person is no longer on the no-fly list. So in Fikre v. FBI, the Ninth Circuit confronted a very similar factual situation as to the facts in this case. It was a case of an American citizen who flew overseas and then was placed on the no-fly list. Jonas was actually tortured in the UAE, sought asylum in Sweden, and had litigated for years about his no-fly list status. During the course of that litigation, years after the litigation commenced, the federal government decided to adjust his watch list status and disclose that to the court, that he was no longer subject to the flight ban. And so just as the lower court did here, the lower court in Fikre v. FBI dismissed the case. That case was appealed to the Ninth Circuit, and the Ninth Circuit had to deal with, well, is there a voluntary secession when a person who's on the no-fly list files a lawsuit and then, subsequent to that filing, gets removed from it? And what the Ninth Circuit said is that regardless of the fact that the person can travel, quote, vindication in this action would have actual and palpable consequences for Fikre, unquote. It's because the no-fly list, the terrorist watch list, the selectee list are all stigmatizing that the remedy still remains outstanding. The remedy for Imam Abdi is not simply the ability to fly in the future. The remedy for Imam Abdi that the federal government owes him is a clearing of his name. A commitment that the same facts won't be applied to the same standard to replace him. All the clearing of your name cases, that is the plus injury cases, require a public defamation of your name. And here there is no – that's the whole problem about the secrecy you're complaining about. It is not public. And you're saying, well, yeah, but people could have observed him being given more scrutiny at the airport. But nobody knows why. I mean, it could just be random. I mean, we all get random things occasionally. So I think you've got a real problem on the clearing of your name approach of the lack of a public defamation, as it were. Your Honor, the watch listing system discloses the stigmatizing status to the public in two different ways. One is outright dissemination. So the allegations in the complaint are that the watch list is disseminated not only to other – to every single federal agency that exists. But not publicly. I mean, I could, as a public person, call anybody, including those recipients of the list, and say, is this guy on the list or not? They wouldn't tell me. Well, there's no – there's no Tenth Circuit case that says that in order to be – to qualify under the Sigma Plus Factor, that it has to be Google-able. No, not Google-able. But there are – and I don't know even if there's a Tenth Circuit case. But there certainly is prevailing – predominant, prevailing case law that it has to be a public dissemination. Nothing like this has really ever been adjudicated under the Sigma Plus Factor. But one, the extent of the dissemination to third parties is extraordinary here. More than 18,000 public and private entities receive access to TSDB information. More than 60 countries receive access to TSDB information. Private entities, for-profits, non-profits, receive access to TSDB information. That's the extent of the dissemination. But the operation of the watch list also discloses to the public your status on the watch list. Imam Abdi's family knows that he's on the watch list because – Not because of what he told them. Not only because of what – You can't create your own lawsuit, I wouldn't think. Yes, you're right. That's true. But it discloses it because the nature of a TSDB designation is that it's contagious. It doesn't just affect you, it affects who you're traveling with as well. And so they know that it's not random because when Yusuf Abdi is searched, when TSDB listees are searched at the airport, their whole travel party is searched at the airport. When TSDB listees cross the border, sometimes they're annotated as armed and dangerous and they're removed from their car at gunpoint in handcuffs in front of their family, which is not a random type of screening. But there's no allegation that that happened to him, or he's been threatened to him, or that he's been accused of being armed at any point. Well, yes, the accusation that he's a war criminal was made by him not being allowed to fly. In order to be placed on the no-fly list, the no-fly list standards aren't actually public, and in order to be placed on the no-fly list, you must, in the government's eyes, they must reasonably... Use the passive voice. Who accused him of what? The Terrorist Screening Center accused him of being a known or suspected terrorist when it included him in the Terrorist Screening Database. I have a practical question. If you prevail and get past motions to dismiss, etc., is there going to be a trial, and does the government bear the burden of proving that this person is eligible for the list, and what about national security implications of those types of trials and those types of discovery? I mean, what's step two in this case? Yes, Your Honor, there has been a no-fly list trial that has not resulted in any leaks of state secrets information. That no-fly list trial ended in a judgment in favor of the plaintiffs because... Which one was that? Which one was that? That was Ibrahim v. DHS. Okay. Which court? In the Ninth Circuit. In Ibrahim v. DHS, it turned out after years of litigation that the person had been placed on the no-fly list on accident, inadvertently. And that's the level of rigor that we see throughout the no-fly list. I'm troubled about what appears to be a practice of the government to down-list people every time there's a lawsuit, and that would be a way to try to immunize. So I have two questions. You said there was a Ninth Circuit case that had that issue before it, but it doesn't sound like they squarely addressed it. You can answer that question. Secondly, and your briefs are filled with that capable of repetition, but is that a claim that was made in the case? I know your briefs make it, but is it legitimate if we go back to the complaint and the filing documents, is it made? Yes, Your Honor. The complaint is really clear in each count. The challenge is... It is or is not? I'm sorry? You said the complaint is or is not. I'm sorry. The complaint is clear. It clearly says capable of repetition. It says not moot because capable of repetition. Not moot because of voluntary secession. So there is... The complaint says not moot because of voluntary secession. I don't believe it uses those magic words, but the complaint in its counts refers to the watch list, and it defines this up top in the background section, as the terror watch list, which has two subsets. Does it say that we admit that our client is no longer subject to not flying, but that could be reinstituted at any time? It does acknowledge that he's able to fly, but past that we don't know. So it doesn't say, it does not say, and the government could reinstate it. So it does not assert a... It's only in your briefs that you're asserting capable of repetition. Well, the capable of repetition... Our obligations in the complaint are to provide the factual allegations that give rise to the plaintiff's claims and defenses, and here the voluntary secession argument comes one-fold from they voluntarily took him. They let him fly after he was subject to the flight ban, and they haven't changed any of the standards. And this is a guy, this is a plaintiff, who has gone through the administrative process twice, in 2013 after languishing in the terrorist watch list for years, and then again in 2015 after... Thank you. You've answered my question as well. Yes, sir. I'll give you some of that also. Let's hear from Mr. Waldman. Good morning, Your Honors. May it please the Court. My name is Joshua Waldman from the Department of Justice representing the apolice. I think it's important to remember we're here on a motion to dismiss a specific complaint. It's important to realize what was in the complaint and what's not in the complaint. Judge Rebell, to address your question, there was nothing in the complaint about the no-fly list. There was no argument about voluntary secession or mootness or anything like that. The allegations in the complaint talk about screening and delays resulting from the selectee list, and that is it. That is the only harm alleged in the complaint. And that is why the district court did not address a no-fly claim list, because it did not understand that to be part of the complaint. If there was something in the complaint that the plaintiff thought was overlooked, the time to do that was either in response to our motion to dismiss briefing, where we pointed out that there was no claim against the no-fly list. If the judgment had been entered and they thought, hey, you missed a count in my complaint, you file a motion to reconsider or a motion to amend the complaint. But none of that was done in this case. So what we're talking about here are the very specific allegations in the complaint about the selectee list, and that is all. With respect to those claims and the due process count in the complaint that the district court correctly dismissed, the plaintiff admits in his complaint and admits again today that on five separate occasions he flew. There's no claim here that there was a prohibition on travel. He was on the no-fly list previously, was he not? That's the allegation in the complaint. But there's nothing in the record here to show one way or the other. Why was he not permitted to return from Kenya then? Well, I don't know what happened then, but I can tell you this, Your Honor. Today and as of 2015, if you are a U.S. citizen, as plaintiff is, and you experience a denial of boarding and you file a redress complaint with TSA, you will be told what your no-fly list status is. Are you or are you not on that list? But that didn't even happen here because the redress complaint that was sent to TSA said only I've had delays but admitted that he was able to fly. And then voila, he was allowed later to board the flight in Nairobi and return, right? I'm sorry. He was allowed to return from Kenya. Was the status changed? Is that what enabled him to return from Kenya? Well, I don't know that, Your Honor. What can you tell us? Can you tell us if he's on the selectee list? We don't publicly confirm or deny the selectee list status, but on a motion to dismiss, he alleges that he was on it, he alleges that he has delays, and we accept that as true for purposes of the motion to dismiss. I'm fond of a book by Kafka called The Trial, and I feel like I've entered into real-life fiction. It seems to me if you're on a list that you can't tell us about and you want to get off the list, because it does have real-life consequences to it, even if I called it de minimis, but if I got patted down by TSA every time, I'd be unhappy about that. How does he get off the list if he doesn't file a lawsuit? Well, you can file a redress claim, and at that point a redress claim triggers an entirely new analysis by TSA. Has he done that? He has. You can submit any evidence that you think is pertinent to what your status should or shouldn't be, and it's reevaluated. Now, we don't confirm or deny what the end result is, but also remember I understand that people find this to be inconvenient if they're searched at the airport or they have delays, but as your honors have pointed out, that can happen for any number of reasons, and people expect delays at the airport. You could be randomly selected for the same enhanced screening that a person on the selectee list gets. So there are many reasons beyond the selectee list why this could happen. That's true, and maybe that's relevant on the stigma plus claim more than the substitute due process list, but people get wrongly or improperly put on the list, and they want to get off the list, and he's not taken off the selectee list, I suspect. How do you get off the selectee list if it's been wrongfully assigned? Well, first, certainly you don't bring a substantive due process claim, which is what he brought here, because in order to do that you have to first define the right narrowly, which is not the right to travel, but the right to travel unimpeded by any additional screening. Is that an APA claim then? How do you get off the list? Well, first you'd file the redress claim. If you think you're still on the list afterwards and you're unhappy, I suppose you could bring some sort of APA claim, but not one predicated on substantive due process or procedural due process. But in this case, what we have is a due process claim, and so in order to bring that kind of claim, you have to show a protected liberty interest, and as the Sixth Circuit held in Boudin, which is directly on point, these minor burdens don't rise to the level of a protected liberty interest, and therefore you don't have a procedural due process claim or a substantive due process claim, either as sort of a freestanding protected liberty interest or under a stigma plus standard. They both fail. And I think Boudin is persuasive and as close as you could possibly get on the facts. So once you're on the list, you can only get off by grace, and you don't even know you got off the list. If there's a list. But remember, Your Honor, suppose someone was on the list and they get off the list. That doesn't even guarantee that you don't go through exactly the same screening when you come to the airport. No, but you probably know. You probably realize that there's been a change because you're not getting it every time, right? Possibly. Really? You're not sure of that? You could surmise anything. You could surmise what you want, but the question here before the court is whether the incidental extra screening and delays rises to a constitutional dimension under the due process. What are the number, if you can tell us, of people on the list, and how has that grown in the last few years? I don't know the answer to that question. I read it. I read something in the briefs about that that you don't know. I don't know the answer to that question. And I don't think that it's really relevant to the outcome of the due process. But it's relevant to my discomfort, at least, with a representative of the government standing at that podium and basically shrugging his shoulders and telling us, too bad if you're on there. You're at our grace. You can send us a letter. Maybe we'll read it. Maybe we won't read it. You can understand that doesn't go down too well. Well, I haven't said that maybe we'll read it, maybe we don't. I've said the opposite. How does the person know if the government even read the letter? Well, I think you take it, what we do is we ask, when you file a redress complaint, we say, send us all of the information that you have that's pertinent, and it triggers an entirely new evaluation of that person at that time. And so I think there's a presumption of government regularity that when we come here and we say, this is what we do, we reevaluate a person, including not just the one-sided record that we had before, but now a two-sided record, which includes what we knew and everything that you've told us in addition. And I would say, Your Honor, in a similar vein, although we don't have a no-fly list claim in this case, I want to talk about that procedure a little bit because the other side brought it up. In those cases, some people are taken off the no-fly list, particularly because of what they say in that process, and some people aren't. And, Judge Ebel, you had concerns earlier about, well, do we just take people off to sort of get rid of the case? And the answer to that is, no, we do not. The answer is that the record, the experience, just the experience is pretty correlative that you do. There are at least three or four examples of suits, and then all of a sudden they're not on the list anymore. Well, I can give you an example. There's a case, it was formerly known as Lateef, now it's known as Carrier in the Ninth Circuit. There were about 15 plaintiffs. They submitted redress applications under the new process. Some were told they're not on the no-fly list, and some were told that they were on, they submitted their evidence, and they remained on. And that case continues, and then there was litigation over whether they were properly on the no-fly list. That case continues. How do they challenge the determination of no-fly, selective, completely off the list? Is there an internal appeal? There is a redress application, but in this particular case in Carrier, what happens is they're told their status, they're given an unclassified summary of the reasons, the court receives an ex parte in-camera submission of classified evidence and other things that can't be publicly released, and then there can be a determination of whether someone's properly on the list or not. Is that process because of the redress process,  Well, it's both, Your Honor. It used to be something different, and now it's something where people get told their no-fly list status. And one of the differences is that in a no-fly list claim, when you're actually prohibited from flying, the district court in that case held, that does rise to a due process protected liberty interest because you're actually denied boarding. But cases of courts that have dealt with, well, all you get is just a little bit of extra screening and there's delays, that doesn't rise to a constitutional dimension. There's a very different view from a due process perspective of those two different cases. And that is why in this case and in the district court held, there's no protected liberty interest, and that's why the Sixth Circuit in Beidoune and again in the Bozzi case held, there's no protected liberty interest with respect to the selectee list, specifically distinguishing it from the no-fly list where the interest is greater because you're actually prohibited from boarding. I just want to make clear what is not in this case. I think that the plaintiff here is not in the complaint asserting a challenge, a procedural due process challenge to the process by which one can challenge getting on or off the select list. Is that right? That's correct. Well, it was originally in the complaint, but if you'll see on appendix page 272, in oral argument, counsel specifically said, I'm not, I'm waiving that claim. I'm abandoning that claim. That's my understanding. And I will say kind of echoing my colleagues that that is to me the government's process there is very troubling. We're not going to tell you where you're on the list. We're not going to tell you why you're on the list. You can write us a letter. We're not going to tell you how you're responding to that letter. I'm very troubled about that, but I unequivocally believe, and you've just asserted it, and I think the record confirmed it, that that is not an issue for us in this case. That's correct, Your Honor. So that would be a case for another day. And in fact, I'm glad you brought it up because it does impress upon us something that's a little bit odd about this case, which is the whole entire question, whether there's a protected liberty interest, stigma plus, are all antecedent questions that go to the procedural due process question. And if there's no procedural due process claim because you've abandoned any challenge to the procedures, then what are we even talking about in terms of the liberty interest? And I'd be happy to have an opinion that said there's no liberty interest, but it's somewhat academic because it goes to a claim that has been abandoned by plaintiff's counsel at oral argument below. Although he might have been on the no-fly list, which you're not able to confirm, but he certainly can reasonably suspect that he could be relisted on the no-fly list. I mean, it's probably not moot because it's capable of repetition. I mean, the fact that he's susceptible to a change of status for the worse, doesn't that really compel us to reach that no-fly list question even though there's no current denial of movement? No, Your Honor, because you can't reach a claim that wasn't presented in the complaint, and that was our point. He didn't bring a no-fly claim in the complaint. He only challenged the selectee list. But I do want to say, if something happens in the future, say he's denied boarding in the future, and he files a redress claim, and he says, I was denied boarding, I think I'm on the no-fly list, he will be told whether he's on the no-fly list or not, and he can challenge that designation in that process. He will be given an unclassified summary of the reasons, and he can respond to it. I want to be crystal clear, that can happen. We're not saying if that happens in the future that he's foreclosed from bringing that claim. We're saying the opposite. But in this case, you're dealing with a complaint before you in which a no-fly list claim was not pressed below, was not passed upon below. I may have mispronounced that. He cited to FIGRA. Could you comment on that? Yeah, and FIGRA, I know this well because I litigated that case as well. I thought you might have. I did. The complaint stated a claim against the no-fly list. He went through the redress procedures that I just talked about, and then he was removed thereafter, and there was a claim about mootness. But the important point in that case is he brought a claim against the no-fly list, and he had allegations in his complaint all about that. That was what the whole case was. There was a Fourth Amendment claim, but that's not relevant to this point. So he brought that claim, and he's free to bring that claim if he's denied boarding in the future and he goes through the redress process and he's told that he's on the no-fly list. We're not saying he can't bring that claim then, but he hasn't brought it now, and he didn't assert it in his complaint. And from the administrative redress proceedings through the entire course of the district court litigation, nobody, not the agency, not the district court, understood that to be part of the case, and he never said at the end of the judgment, hey, you missed a whole part of my complaint. Motion to reconsider, motion to amend the complaint. He never did that, and he's trying to expand the scope of the litigation in this appeal, which he's not free to do. Why doesn't the department extend the same review process to people that think they're on the selectee list? The same process that you were talking about for the no-fly. What's the downside for allowing that process? Then we don't have to have these cases as frequently. One of the reasons why the government didn't used to do this with respect to the no-fly list and continues to not do it with respect to the selectee list, and even with respect to the no-fly list, we only tell you after you've gone to the airport and didn't deny boarding, is we don't want to... It becomes a national security problem if people all over the world couldn't just write in and say, am I on this list, am I on that list? I want to know right now, because then they can find out, well, person A is on the list, person B is not, and if there's some sort of threat, they're going to use person B, not person A. I get that, but I'm just wondering, if I suspect I'm on the list and reasonably do so because I get screened every time, why not have a review process that allows the in-camera review of unclassified information being provided? Well, it's our view that it used to be that that was the same thing with the no-fly list, but a district court in Oregon held that there's a due process interest there, but no appellate court has ever held that that same interest, due process interest, lies with the selectee list because the burden is so much more minimal. Nobody is denying the right to fly. You're getting extra screening that's really no different from randomized people, and we're talking about 10 or 15 minutes at an airport. It just doesn't have the same sort of constitutional dimension, and since it's not constitutionally required and we have a strong interest in withholding this information because of the national security interests that I just mentioned, we don't do that for the selectee list. I think your time's expired.  Thank you, Your Honors. Thank you, Your Honors. Just to begin with, to answer a question that the defense counsel put in, there's more than one million individuals on the TerraWatch list now. They've been added to the list at a rate of over 150,000 a year. How do we know that? I'm sorry? How do we know that? What's the basis for that representation? This is Al-Hadi v. Pehota had about a 15-month discovery process, and during that litigation and a few other cases, specific numbers about the watch list were revealed. Al-Hadi v. Pehota is in the briefs, but it's 1,16-CV-375. And contrary to what opposing counsel said, Al-Hadi v. Pehota was a case of 25 plaintiffs, five of whom were on the no-fly list at the time that the case was filed. Magically, shortly after it was filed, those five folks were all of a sudden able to fly again, and so it became a case. The court approached that case as simply a selectee list case. The Eastern District of Virginia, in September 2017, in regards to just the selectee list, said, quote, the government's trust us approach is inconsistent with the fundamental procedural protections, unquote, and found that there is a liberty interest that is impinged upon by the selectee list alone. And Imam Abdi's biggest consequence, the flight ban was a terrible, despicable situation, but perhaps the most life-altering consequence was not related to his no-fly list annotation, but related to simply his TSDB status. His wife and his children's immigration application, because of his status alone, was delayed for years. When, if Imam Abdi applies for another passport in the future, his passport application will be subject to a segregated process. And when his wife and kids apply for their citizenship, their citizenship applications will be subject to a segregated, more burdensome process. Is he abstaining to assert their injuries, or did they have to be parties to the lawsuit? Under Trump v. Hawaii, under Kerry v. Dinh, the Supreme Court has long recognized the rights of American citizens who have bona fide relationships with people that are not citizens to bring claims that regard them. Do any of those involve the ability of a parent to bring a claim that the child could not get citizenship or green card or something? There is a case in Maryland where foreign nationals are bringing, I'm sorry, U.S. citizens are bringing claims for like a foreign national father who can't get a visa because of watch list status to come visit their children inside the United States. And the court said that he did have standing to bring that claim? The court has not yet adjudicated, yes. So there is no claim? There is no precedent on that? Kerry v. Dinh is perhaps the closest, as well as Trump v. Hawaii. In both of those cases, so for instance, in Trump v. Hawaii, there was a U.S. citizen who had foreign national relatives that were affected by the travel ban, the Muslim ban, and was bringing claims because of how their ability to immigrate or to get a visa to come to the U.S. were impacted. That's been responsive, thank you. Why isn't the redress program an adequate procedural device? Because it's a sham. To begin with, even with regards to the no-fly list modifications in light of Latifi Holder, in El Jadid v. Pehota, the discovery showed that they've actually never concluded a single, full DHS trip process for a person on the no-fly list, that the TSA administrator who has final say on what happens to those DHS trip complaints has never sat down and decided one, ever, in three or four years. Second, for the selectivist people, it doesn't confirm or deny their status. It doesn't even disclose the inclusion standard. The selectivist inclusion standard, why the government is including some people and not others, is a complete secret. Leaked documents show that it's opaque and open-ended. It's associated with terrorism, but the government has never acknowledged what that standard is. Here, the selectivist, remember, is just an annotation of the watch list. Most of the consequences, if Imam Abdi becomes an Uber driver, he won't be allowed to drop off a passenger at a military base. If he wants to buy a gun, he'll be subject to a separate three-day delay. If he ever wants to work for the FBI or really any part of the federal government, the federal government screens prospective employees against the watch list, he's not going to get a job. Any encounter he has with the federal government, with local and state authorities, will always be colored by his TSTB status. That's why this court should remand and reinstate Imam Abdi's procedural due process, substantive due process, and APA claim. Thank you. Thank you, counsel. We appreciate the arguments. You're excused, and the case shall be submitted.